

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-3-1998

# In Re Gutpelet

Precedential or Non-Precedential:

Docket 97-1148

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"In Re Gutpelet" (1998). *1998 Decisions.* Paper 37.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/37

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 3, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-1148

IN RE: SUSANNE GUTPELET,
        Debtor

Susanne Gutpelet,
        Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 96-cv-2439)

Argued: December 12, 1997

BEFORE: NYGAARD and ALITO, Circuit Judges
and DEBEVOISE, Senior District Judge*

(Filed: March 3, 1998)

ANDREW O. SCHIFF, ESQUIRE
(ARGUED)
PETER E. MELTZER, ESQUIRE
Fellheimer, Braverman &
 Kaskey, P.C.
One Liberty Place, 21st Floor
Philadelphia, Pennsylvania 19103-
 7334

Attorneys for Appellant
Susanne Gutpelet

_____

*Honorable Dickinson R. Debevoise, United States Senior District Judge
for the District of New Jersey, sitting by designation.

MICHAEL H. KALINER, ESQUIRE
(ARGUED)
312 Oxford Valley Road
Fairless Hills, Pennsylvania 19030

Attorney for Appellee
Arthur P. Liebersohn

OPINION OF THE COURT

DEBEVOISE, Senior District Judge.

The trustee in bankruptcy of the Debtor, Susanne Gutpelet, objected to the Debtor's claimed exemption in money on deposit in two PNC Bank accounts, asserting that the money was the proceeds of real estate, the transfer of which was avoidable pursuant to the provisions of 11 U.S.C. S 548(a). The bankruptcy court sustained the objection. On appeal the district court affirmed. For the reasons set forth below we will affirm the judgment of the district court.

I. Background

In 1987 the Debtor and her former husband, William Sutphen, were divorced. As part of the marital settlement the Debtor was obligated to pay Sutphen $125,000, which, together with interest, was due in July 1993. The Debtor received real estate which had previously been jointly owned.

In 1990 the Debtor married Herbert Gutpelet ("Gutpelet"). At the time of their marriage Gutpelet owned in his own name real estate located at 1137 Evans Road in Lower Gwynedd Township, Pennsylvania (the "Evans Road Property"). By that time the Debtor had sold the real estate which she had received at the time of her divorce. She received approximately $170,000 net proceeds, which she placed in The Marian State Bank ("the Marian Bank"). It was used to collateralize Gutpelet's indebtedness to the bank and the bank ultimately applied it in payment of Gutpelet's obligations.

2

Gutpelet was deeply in debt in 1992 and 1993, and various liens had attached to the Evans Road Property, including a mortgage held by the Marian Bank.

On October 18, 1993 Gutpelet transferred title to the Evans Road Property to the Debtor. The Debtor testified that she paid no consideration for the property and that the purpose of the transfer was to enable her to obtain a home equity loan in order to pay Gutpelet's creditors. Gutpelet believed that he was not credit worthy and that he could not obtain a loan in his own name.

On February 24, 1994 the Gutpelets obtained a loan from Equity One Incorporated ("Equity One") in the approximate amount of $500,000. They each executed the note and mortgage. After payments were made to Gutpelet's creditors the net proceeds of approximately $128,000 were deposited in a joint bank account at PNC Bank.

On March 4, 1994 the Debtor executed a deed transferring title to the Evans Road Property from herself to "Susanne B. Gutpelet and Herbert J. Gutpelet, her husband." On September 1, 1994 the Debtor and Gutpelet sold the Evans Road Property for a sales price of $800,000. Most of the sale proceeds were used to pay off debts, including the Equity One refinancing loan. The net proceeds of the sale of the Evans Road Property, approximately $158,500, were deposited in a joint account at PNC Bank.

Not all of the proceeds realized from the equity loan and from the sale of the Evans Road Property were used to pay Gutpelet's debts. Some were used to pay the Debtor's living expenses; a part was used to purchase a sewing business in Costa Rica to provide income for the Debtor; she loaned $6,500 to her sister-in-law; she repaid $34,500 which she had borrowed from friends.

On October 27, 1994 the Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. S 101, et seq. Her indebtedness for principal and interest to her former husband amounted at that time to $206,308, about 95% of her total indebtedness. Amended schedulesfiled on June 20, 1995 disclosed the existence of an account in Corestates Bank and two accounts in PNC Bank. None of

these accounts had been disclosed in the Debtor's original schedules. The PNC Bank accounts contained the balance of the proceeds of the sale of the Evans Road Property.

The Debtor claimed an exemption of all three accounts under 11 U.S.C. S 522(b)(2) and applicable Pennsylvania law. The Trustee filed an objection to the exemption of the PNC Bank accounts, asserting that the March 4, 1994 transfer of the Evans Road Property was an avoidable transfer under 11 U.S.C. S 548(a), and therefore the proceeds of its sale were the property of the Debtor's estate.[1] The bankruptcy court sustained the Trustee's objection. The district court affirmed, and this appeal followed.

II. Discussion

Jurisdiction in the bankruptcy court was proper under 28 U.S.C. S 157(a). The district court had jurisdiction under 28 U.S.C. S 158(a). This Court has jurisdiction over the appeal of the district court's judgment under 28 U.S.C. S 158(d).

The bankruptcy court's legal interpretations are subject to plenary review; the factual findings of the bankruptcy court are reviewed for clear error. Since we are in as good a position to review the bankruptcy court's decision as the district court was, we will review the bankruptcy court's findings by the standards the district court would apply. Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc., 50 F.3d 253, 257 (3d Cir. 1995).

The Debtor's exemption claim is based upon 11 U.S.C. S 522(b)(2)(B) which provides that an individual debtor may exempt from property of the estate "any interest in property in which the debtor had, immediately before the commencement of the case, an interest as tenant by the entirety or joint tenant to the extent that such interest as

_____

1. The Trustee also objected to the exemption for all three banks accounts on the ground that the Debtor was precluded from exempting those moneys pursuant to 11 U.S.C. S 522(g), because she intentionally concealed the existence of the accounts. The bankruptcy court ruled against the Trustee on that objection, and the Trustee has not appealed that ruling.

4

a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law." The Debtor notes that under Pennsylvania law property which is held as tenants by the entirety, whether real property or personal property, is exempt from process. In re Balber, 112 B.R. 6 (Bankr. W.D. Pa. 1990). The funds in the two joint accounts at PNC Bank were the proceeds of the sale of the Evans Road Property which had been held by the Debtor and her husband as tenants by the entirety since the March 4, 1994 transfer. Therefore, the Debtor contends, the funds were immune from process under Pennsylvania law and are exempt under S 522(b) of the Bankruptcy Code.

The Trustee asserted before the bankruptcy court that the March 4, 1994 transfer was avoidable under S 548(a)(2) which provides:

> (a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily--
>
> . . .
>
> (2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

Thus to avoid a transfer under S 548(a)(2) the Trustee must establish that: (1) the Debtor had an interest in the property; (2) the interest was transferred within one year of the filing of the bankruptcy petition; (3) the Debtor was insolvent at the time of the transfer or became insolvent as a result thereof; and (4) the Debtor received less than a reasonably equivalent value in exchange for such transfer. BFP v. Resolution Trust Corp., 511 U.S. 531, 535, reh'g denied, 512 U.S. 1247 (1994).

The bankruptcy court found, and it is undisputed, that the Trustee established elements 2, 3 and 4 of an avoidable transfer. The disputed issue was whether the Debtor had an "interest" in the Evans Road Property. The Debtor

5

advances two theories to support her contention that she did not have an interest in the property even though for five months she held legal title. First, she contends that she paid no consideration for the transfer from Gutpelet to herself and therefore had no interest. Second, she contends that "the two transfers should be viewed as two indivisible parts of one integrated transaction in which the Evans Road Property was essentially converted by Mr. Gutpelet from solely owned property directly to entireties property." (Debtor's Brief at 18.)

The bankruptcy court found that the Debtor's involvement in the entire chain of transactions constituted consideration for the transfer to her. These transactions, from the October 18, 1993 transfer of the Evans Road Property to the Debtor until the deposit of the balance of the $800,000 proceeds of its sale in a joint bank account, involved mutual benefits and burdens as between the Debtor and Gutpelet. He was able to repay his debts. She was able to repay certain of her debts and acquire the Costa Rica business.

It is unnecessary, however, to find consideration in order to conclude that the Debtor acquired an interest in the Evans Road Property for S 548(a)(2) purposes. Her extended and extensive dealings with the real estate were sufficient to establish such an interest.

The district court dealt with the Debtor's alternative theory, namely, that Gutpelet's transfer of title to the Debtor and the Debtor's transfer of title to herself and Gutpelet should be viewed as a single transfer of title from Gutpelet to himself and his wife as tenants by the entirety. If that concept were accepted the Debtor never possessed an interest in the Evans Road Property and the first requirement to avoid the transfer would not be met.

There can be no doubt that the Debtor had legal title to the Evans Road Property from October 1993 until March 1994. She argues, however, that the bankruptcy court should have looked beyond the bare passage of title to the reality of the transactions in their entirety, finding that the Debtor did not have the requisite control over the Evans Road Property to give her an "interest" in the property. The

Debtor relies upon In Re Chase & Sanborn Corp., 813 F.2d 1177 (11th Cir. 1987).

In that case a person referred to as Duque caused $660,000 to be transferred to an account of the debtor, Chase & Sanborn. Of this amount $350,000 was gratuitously transferred to Duque's secretary who used it and other funds to pay a bank loan upon which Duque was obligated. The Chase & Sanborn account was opened days before it received the $660,000 and closed days after the $350,000 payment. Thereafter Chase & Sanborn filed a petition under Chapter 11. The Trustee sought to avoid the transfer under S 548. The Court of Appeals held that "[a]lthough the debtor corporation had possession of the funds in controversy by virtue of the transfer to the account, the record demonstrates that the debtor corporation did not have sufficient control over the funds to warrant a finding that the funds were the debtor corporation's property." Id. at 1180.

In Chase & Sanborn the court stated that "[i]n determining whether the debtor had control of funds transferred to a non-creditor, the court must look beyond the particular transfers in question to the entire circumstance of the transactions." Id. at 1181-82. The court found that the Chase & Sanborn account was a mere conduit of funds from and to other parties; that "the actual connection between the funds and the debtor was quite tangential: a two-day layover in a special account then only recently opened and soon thereafter closed." Id. at 1182.

These circumstances are totally different from the circumstances of the present case. The connection between the Evans Road Property and the Debtor was hardly tangential. She held title to it for five months and during that time she joined in mortgaging it and later transferring it to herself and her husband. She contends that she was nothing but a passive tool of her husband who exercised total control, but the findings of the bankruptcy court negating such a limited role are amply supported by the record.

Matter of Zedda, 103 F.3d 1195 (5th Cir. 1997) does not require a different result. There the Court considered a pre-

7

petition transfer of real estate to the debtor for the sole purpose of enabling her to obtain a loan secured by the real estate. Four years later the transferrer-debtor executed and there was recorded a "counter letter" which recited that (i) by virtue of the deed she had acquired record title to the property; (ii) record title had been placed in her name for convenience only; (iii) the property actually belonged to another person; (iv) she had paid no cash consideration for the property and (v) the other person had made all the monthly mortgage payments. Four months later the debtor deeded the property back to the original owner and recited in an addendum to the deed the essential facts set forth in the counter letter. Within a year after the last transfer the debtor filed her petition for relief under Chapter 7 of the Bankruptcy Code. The trustee challenged the re-transfer of the property in part on S 548(a)(2) grounds. The Court of Appeals held that the debtor did not have an interest in the property and rejected the trustee's challenge.

The circumstances of the original transfer to the debtor in Zedda were significantly different from the circumstances in the present case. More important, in Zedda the court noted that whether the debtor had an interest in property was a question of state law, and held that under applicable Louisiana law the original deed, as characterized in subsequent instruments, was a "simulation" which did not actually transfer ownership of the property. Id. at 1204. The facts and the applicable law differ in the present case.

We conclude that the bankruptcy court's finding that the Debtor had an interest in the Evans Road Property and that the Trustee established each of the other requirements to avoid the March 4, 1994 transfer of that property was not clearly erroneous. Therefore the bankruptcy court properly sustained the Trustee's objection to the Debtor's claimed exemption in the two PNC Bank accounts.

III. Conclusion

We will affirm the January 27, 1997 order of the district court, which affirmed the February 20, 1996 order of the bankruptcy court.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit

9