## In re MEMOREX TELEX CORPORATION, Debtor.

Data Systems Network Corporation, d/b/a Information Decisions, Defendant–Appellant and Cross–Appellee,

v.

Memorex Telex Corporation, Plaintiff–Appellee and Cross–Appellant.

Civ.A. Nos. 99–240–JJF, 99–241–JJF.

United States District Court, D. Delaware.

Dec. 17, 1999.

James L. Patton, Jr., Young, Conaway, Stargatt & Taylor, Rodney Square North, Wilmington, DE, for Memorex Telex Corp., debtor.

Pauline K. Morgan Young, Conaway, Stargatt & Taylor, Rodney Square North, Wilmington, DE, for Memorex Telex Corp., appellant.

Charlene D. Davis, The Bayard Firm, Wilmington, DE, for Data Systems Network Corp., appellee.

## OPINION

FARNAN, Chief Judge.

Presently before the Court is an appeal and cross-appeal filed by Data Systems Network Corporation d/b/a Information Decisions ("Data Systems") and the Debtor, Memorex Telex Corporation (the "Debtor"), respectively. By its appeal, Data Systems challenges (1) an evidentiary ruling by the Bankruptcy Court during the November 12, 1998 trial in this adversary proceeding, and (2) the findings of the Bankruptcy Court made during the hearing and codified in the Bankruptcy Court's Order dated November 24, 1998 entering judgment for the Debtor. By its cross-appeal, the Debtor challenges the Bankruptcy Court's November 24, 1998 Order on the ground that the Bankruptcy Court erred in failing to award the Debtor pre-judgment interest and costs. For the reasons set forth below, the November 24, 1998 Order of the Bankruptcy Court will be affirmed.

## BACKGROUND

On October 15, 1996, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On January 30, 1998, the Debtor commenced an adversary proceeding against Data Systems seeking payment of a pre-petition account receivable in the amount of $51,274.25 pursuant to Section 542(b) of the Bankruptcy Code.

The pre-petition account receivable was for the cost, freight and handling charges of a Tricord Super Server (the "Equipment"), which the Debtor contends it delivered to Data Systems. Although the Debtor issued an invoice in the amount of $51,274.25 to Data Systems for the Equipment on September 27, 1996, Data Systems did not pay the amount due under the invoice.

In its Answer to the Debtor's Complaint, Data Systems admitted receiving the Equipment, but alleged that the Equipment was "accepted on an inspection and evaluation only basis," and that the Equipment was "defective and missing parts."

In its response to the Debtor's request for admission, Data Systems indicated that it had "no record of any shipment" of the Equipment, but knew of "anecdotal stories of receipt of similar goods ..."

On November 12, 1998, the Bankruptcy Court held a trial in the matter. At the trial, the Debtor offered the testimony of Janice Riggs, as well as certain documentary evidence in support of its Complaint. Ms. Riggs testified to and the Debtor produced a purchase order for the Equipment signed by an employee of Data Systems, Rosa Piccone. (Tr. at 59, Debtor's Ex. 1). Ms. Riggs testified and the Debtor produced documents indicating that the Debtor took all the necessary steps to fill Data Systems' purchase order, including obtaining credit approval, transmitting the purchase order to the Debtor's customer service representative, processing the order for shipment (Tr. 7–8, Debtor's Ex. 2), and having a salesman deliver the Equipment to Data Systems (Tr. 10, Debtor's Ex. 2). Although the Debtor's documents included the words "Do Not Ship," Ms. Riggs testified that this notation was necessary and routinely utilized by the Debtor to designate used equipment, so that the order would not be filled with new inventory from the Debtor's warehouse. Rather, Ms. Riggs testified that Data Systems' purchase order was filled by a direct transfer ("DFT") from the Debtor's Westwood office. (Tr. 9–11, Debtor's Ex. 2). The DFT occurred on September 26, 1996. (Tr. at 12, Debtor's Ex. 4).

Following the DFT, an invoice was generated and forwarded to Data Systems and a commission statement was generated for the salesman who made the sale. (Tr. at 9, 11–13, Debtor's Ex. 3, 5). Although Data Systems received the invoice, it did not render payment to the Debtor.

In order to collect on the invoice, the Debtor's in house collectors made a series of telephone calls to Data Systems requesting payment for the overdue invoice. With regard to these calls, Ms. Riggs testified that "[i]t was a requirement of Memorex Telex that the collectors make records of their contacts with the customers." (Tr. at 15). These call records took the form of "collectors' call logs" which were "typed into the customer's account" on the Debtors' computer system. The Debtor's Call Log reflects at least 20 contacts and requests for payment, and a promise by Data Systems to render payment. (Tr. 15–17, Debtor's Ex. 6). There were no notations on the Call Log or elsewhere in the Debtor's files indicating that Data Systems refused to pay the invoice, because it had not received the Equipment. (Tr. 18–19, Debtor's Ex. 6).

In response to the Debtor's testimony, Data Systems offered the testimony of Michael W. Grieves, the Chief Executive Officer of Data Systems. Although Data Systems admitted receiving the Equipment in both its Answer to the Complaint and its response to the Debtor's request for admissions, Mr. Grieves testified that Data Systems never received the Equipment. Explaining the discrepancy between Data Systems' Answer and the position it was taking at the trial, Mr. Grieves testified that the Equipment may have been shipped directly from Tricord and not from the Debtor, despite the purchase order issued from Data Systems to the Debtor for the same piece of Equipment. Aside from Mr. Grieves testimony, Data Systems offered no other evidence, documentary or otherwise to support its position. (Tr. 74).

Finding the evidence offered by the Debtor sufficient to satisfy its burden of proof, by a preponderance of the evidence, the Bankruptcy Court stated, "The evidence presented by the plaintiff in my view is convincing in demonstrating that there was an order, there was shipment and there was a persistent, many-month request for payment, without the slightest hint from anybody that payment was not

forthcoming because of the absence of delivery." (Tr. 78).

Commenting on the evidence presented by Data Systems, the Court noted that Mr. Grieves had no personal knowledge of this situation, as his office was located in Farmington, Michigan and the purchase order was made from and the Equipment was to be delivered to Grand Rapids, Michigan. (Tr. 79). The Court further observed that Data Systems failed to produce any documentary evidence to support its position that it had received the Equipment from and returned the Equipment to Tricord. According to the Court, "It seems to me that at a minimum that, if the defendant keeps the kinds of records its CEO suggests they keep, they could have easily come in here with documents showing the return of the equipment to Tricord. They didn't do that." (Tr. 75).

Concluding that "the preponderance of the evidence supports the conclusion that the product was purchased, shipped, invoiced and not yet paid for," the Court entered judgment in favor of the Debtor in the amount of $51,274.25. This appeal and cross-appeal followed.

## JURISDICTION AND STANDARD OF REVIEW

Under 28 U.S.C. § 158(a), the Court has jurisdiction to adjudicate appeals from final judgments, orders and decrees of bankruptcy judges. Pursuant to Federal Rule of Bankruptcy Procedure 8013, the Court "may affirm, modify, or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings." Fed.R.Bankr.P. 8013.

■ In reviewing a case on appeal, the bankruptcy court's factual determinations are subject to deference and shall not be set aside unless clearly erroneous. *Id.;* see *In re Gutpelet,* 137 F.3d 748, 750 (3d Cir.1998). Under the clearly erroneous standard of review, "[a] strong presump-

tion exists in favor of the trial court's findings of fact, and the burden of proof is on the party attacking their validity." King, *Collier on Bankruptcy,* 8013.02, at 8013–4 (15th ed.1997). Accordingly, a reviewing court may not "reverse the findings of the trier of fact simply because it is convinced that it would have decided the case differently." *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

■ Unlike factual determinations, a bankruptcy court's conclusions of law are subject to plenary review and are considered de novo by the reviewing court. *Meespierson, Inc. v. Strategic Telecom, Inc.,* 202 B.R. 845, 847 (D.Del.1996). As to evidentiary rulings made by a bankruptcy court, the Court of Appeals for the Third Circuit has recognized that appellate review of a trial court's rulings based on a permissible interpretation of the Federal of Evidence is limited to the abuse of discretion standard. *United States v. Reilly,* 33 F.3d 1396, 1410 (3d Cir.1994); *United States v. Console,* 13 F.3d 641, 656 (3d Cir.1993).

## DISCUSSION

By its appeal, Data Systems raises two issues. First, Data Systems contends that the Bankruptcy Court abused its discretion in admitting into evidence and expressly relying upon the Debtor's Call Log. Second, Data Systems contends that the Bankruptcy Court erred in concluding that the Debtor satisfied its burden of proof that the Equipment was delivered to and received by Data Systems. By its cross-appeal, the Debtor contends that the Bankruptcy Court erred in failing to award the Debtor pre-judgment interest and costs as part of the judgment it entered in favor of the Debtor on November 24, 1998.

A. *Whether the Bankruptcy Court Abused its Discretion in Admitting into Evidence and Relying Upon the Debtor's Call Log*

■ Rule 802 of the Federal Rules of Evidence provides that "[h]earsay is not

admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by an Act of Congress." An exception to the general rule precluding the admission of hearsay evidence is provided for in Rule 803(6), which allows for the admissibility of business records. In order to admit a document under the business records exception to the hearsay rule, the party seeking admission must lay a foundation through the testimony of a "custodian" or other "qualified witness" that (1) the declarant in the records had knowledge to make accurate statements; (2) the record was made at the time of the event recorded; (3) it was the regular practice of the business to make the record; and (4) the record was kept in the regular course of business. *United States v. Console,* 13 F.3d 641, 657 (3d Cir.1993).

■ In this case, Data Systems challenges the Bankruptcy Court's ruling that the Call Log was admissible as a business record. According to Data Systems, the Call Log is inherently untrustworthy, because it was prepared in anticipation of the bankruptcy litigation. In support of its position, Data Systems relies on *Palmer v. Hoffman,* 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943).

In *Palmer,* the plaintiff brought an action against the defendant railroad company for personal injuries arising from a grade crossing accident. Two days after the accident, the engineer of the train, who died before trial, made a statement concerning his version of the accident. At trial, the defendant sought to admit the engineer's statement pursuant to the business records exception to the hearsay rule. Affirming the trial court's decision that the document did not amount to a business record, the United States Supreme Court concluded that the record was "not a record made for the systematic conduct of the business as a business." *Id.* Further, the

Court observed that the record was not "typical of entries made systematically or as a matter of routine to record events or occurrences, to reflect transactions with others, or to provide internal controls." *Id.* Rather, the Court concluded that the document was created primarily for litigation purposes. The Court stated, "Unlike payrolls, accounts receivable, accounts payable, bills of lading and the like, these reports are calculated for use essentially in the court, not in the business. Their primary utility is in litigating, not in railroading." *Id.* at 114, 63 S.Ct. 477.

After reviewing the record on this issue in light of the *Palmer* decision, the Court concludes that *Palmer* supports, rather than contradicts, the admissibility of the Call Log under the business record exception to the hearsay rule. Although the Call Log was generated subsequent to the Petition Date, Ms. Riggs testified that "[I]t was a requirement of Memorex Telex that the collectors make [Call Logs] of their contacts with the customers and that it was Memorex's practice to maintain and retain these types of records." (Tr. at 15). Thus, the keeping and maintaining of Call Logs, whether pre- or post-bankruptcy, enabled the Debtor to keep track of delinquent accounts and to further the collection of past due accounts receivable. As such, the Debtor's generation of the Call Log for the Data Systems account was merely a continuation of its ordinary and routine accounts receivable collection practices. In this regard, the Court concludes that the Call Log comes within the purview of documents described by the *Palmer* court as admissible business records, because the Call Log is "typical of entries made systematically or as a matter of routine to record events or occurrences, to reflect transactions with others, or to provide internal controls." *Palmer,* 318 U.S. at 113, 63 S.Ct. 477.

Data Systems contends that the Call Log is inherently untrustworthy because

of the prospect of litigation over the accounts receivable. The Court disagrees with Data Systems. The fact that litigation might be necessary to collect on the accounts does not render the Call Log untrustworthy. Courts have considered the business significance of records apart from their use in litigation as an indicia of trustworthiness. *See United States v. Frazier*, 53 F.3d 1105, 1109–1110 (10th Cir.1995); *Condus v. The Fed. Deposit Ins. Corp.*, 1997 U.S.Dist. LEXIS 223232 (D.N.J. Nov. 18, 1997). In this case, the Call Logs are part and parcel of the Debtor's management of its accounts receivable, and therefore, they have significant business use apart from their use in litigation. Because the Call Log was generated as part of the Debtor's routine management of its accounts receivable and has a business significance apart from litigation, the Court cannot conclude that the Bankruptcy Court abused its discretion by admitting into evidence and relying upon the Debtor's Call Log.

B. *Whether the Bankruptcy Court's Finding that the Debtor Satisfied its Burden of Proving that the Equipment was Delivered To Data Systems Is Clearly Erroneous*

█ In arguing that the Debtor failed to satisfy its burden of proving the Equipment was delivered to Data Systems, Data Systems contends that the bankruptcy court ignored several facts, including (1) that the Debtor failed to provide a receipt of delivery signed by Data Systems; (2) the Invoice prepared by the Debtor states "Do Not Ship"; and (3) the unusual nature in which the Debtor claims it shipped the Equipment via the salesperson.

In reviewing the record of the hearing before the Bankruptcy Court, it is evident to the Court that the Bankruptcy Court heard testimony on each of these issues from both the Debtor's witness, Janice Riggs, and Data Systems' witness, Michael W. Grieves. Ms. Riggs testified on both direct and cross-examination that (1) it was not the Debtor's practice to obtain a signed receipt of delivery, (2) the designation "Do Not Ship" meant do not ship from new inventory, but from an off-site facility that delivered used equipment, and (3) the $300 handling charge was for delivery expenses. In contrast to Ms. Riggs testimony, Mr. Grieves testified that Data Systems' records indicate that they never received the Equipment, even though Data Systems admitted in its Answer it had received the Equipment. Mr. Grieves further testified that Data Systems did not buy used equipment.

In addition to Ms. Riggs testimony, the Debtor produced documentary evidence including a purchase order prepared by Data Systems, an internal memorandum dated the same date as the purchase order concerning filling the order with used Equipment located in the Westwood office, a computer printout of the shipping information, invoices for the Equipment, and the Call Log. In support of its position, Data Systems did not produce any documentary evidence and relied solely on the testimony of Mr. Grieves and its cross-examination of Ms. Riggs.

A bankruptcy court's "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed.R.Bankr.P. 8013, *see also Protos v. Volkswagen of America, Inc.*, 797 F.2d 129, 135, n. 3. (3d Cir.1986) (noting that "deference to the trial court is most warranted where … credibility determinations are at issue"). Further, in applying the clearly erroneous standard of review to a trial court's findings, the United States Supreme Court has recognized:

If the [trial] court's account of the evidence is plausible in light of the record

viewed in its entirety, the [appellate] court ... may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous ... This is so even when the [trial] court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts.*

*Anderson v. Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (emphasis added). In this case, the Bankruptcy Court credited the testimony of Ms. Riggs over the testimony of Mr. Grieves, found the Debtor's documentary evidence persuasive to establish that the Debtor received an order from Data Systems, processed the order, shipped the order, and obtained promises to render payment from Data Systems representatives, "without the slightest hint from anybody [at Data Systems] that payment was not forthcoming because of the absence of delivery." (Tr. 78). In so doing, the Bankruptcy Court rejected, as unsupported by the evidence, Data Systems contentions concerning the "Do Not Ship" designation, the delivery by a salesperson, and the absence of a signed delivery receipt. Reviewing the record as a whole, the Court cannot conclude that the Bankruptcy Court's findings are clearly erroneous, where as here, those findings are based on the Bankruptcy Court's credibility determinations and supported by a reasonable interpretation of the evidence. Accordingly, the Court will affirm the Bankruptcy Court's Order entering judgment in favor of the Debtor.

C. *Whether the Bankruptcy Court Erred in Failing to Award the Debtor Pre–Judgment Interest and Costs*

By its appeal, the Debtor contends that the Bankruptcy Court erred in failing to award the Debtor pre-judgment interest and costs in order to fully compensate the Debtor for the loss it suffered as a result of Data Systems' failure to pay for the purchased Equipment. It is well-established that the decision to award pre-judgment interest and costs is committed to the discretion of the trial court. *Joy Technologies, Inc. v. Flakt,* 954 F.Supp. 796, 808 (D.Del.1996); *Action Drug Co. v. Overnite Transp. Co.,* 724 F.Supp. 269 (D.Del.1989); *see also Poleto v. Consolidated Rail Corp.,* 826 F.2d 1270, 1279, n. 16 (3d Cir.1987); Fed.Bankr.R. 7054(b) ("The court *may* allow costs to the prevailing party ...") (emphasis added).

In this case, the Debtor did not request pre-judgment interest and costs at the hearing and did not include such interest and costs in the judgment order that it prepared for the Bankruptcy Court. Rather, the issue of pre-judgment interest was only raised by the Debtor after Data Systems filed its appeal. Because the Debtor did not request pre-judgment interest and costs and did not include such sums in the judgment order it prepared, the Court cannot conclude that the Bankruptcy Court abused its discretion in failing to award the Debtor pre-judgment interests and costs. Accordingly, the Bankruptcy Court's Order entering judgment in favor of the Debtor in the amount of $51,274.25, excluding pre-judgment interest and costs, will be affirmed.

## CONCLUSION

For the reasons discussed, the November 24, 1998 Order of the Bankruptcy Court will be affirmed.

An appropriate Order will be entered.