**LERNOUT & HAUSPIE SPEECH PRODUCTS, N.V., Dictaphone Corporation, and L & H Holdings, USA, Inc., Appellees,**

v.

**STONINGTON PARTNERS, INC., Stonington Capital Appreciation 1994 Fund L.P. and Stonington Holdings, LLC, Appellants.**

In re Lernout & Hauspie Speech Products N.V., et al., Debtors.

Civ. A. No. 01–594–JJF.
Bankruptcy Nos. 00–4397(JHW) to 00–4399(JHW).

United States District Court, D. Delaware.

Sept. 17, 2001.

Robert J. Dehney, Esquire, Gregory W. Werkheiser, Esquire, and Donna L. Harris, Esquire of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware. Of Counsel Luc A. Despins, Esquire, and Dennis C. O'Donnell, Esquire of Milbank Tweed Hadley & McCloy LLP, New York City, for Appellees.

Brendan Linehan Shannon, Esquire of Young Conaway Stargatt & Taylor, LLP., Wilmington, Delaware. Of Counsel James L. Garrity, Jr., Esquire, Alan S. Goudiss, Esquire, H. Miriam Farber, Esquire, and Olav A. Haazen, Esquire of Sherman & Sterling, New York City, for Appellants.

### MEMORANDUM OPINION

FARNAN, District Judge.

Presently before the Court is an appeal by Stonington Partners, Inc., Stonington Capital Appreciation 1994 Fund, L.P., and Stonington Holdings, L.L.C. (collectively, "Stonington") from the August 27, 2001 Order (the "Order") of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") granting the Debtors' Motion For Partial Judgment On The Pleadings, Or In The Alternative, Partial Summary Judgment As To the Sixth Cause of Action Set Forth In L & H Group's Second Amended And Supplemental Complaint For Declaratory And Injunctive Relief And Actual Damages. (D.I.1, Ex.A). For the reasons set forth below, the portions of the Bankruptcy Court's August 27, 2001 Order denying comity and enjoining Stonington from further prosecution in Belgium will be affirmed.

## I. Background

Lernout & Hauspie Speech Products, N.V., ("L & H") is a corporation incorporated under the laws of Belgium and headquartered in Burlington, Massachusetts and Ieper, Belgium. (D.I.4 at 4; D.I.8 at 6). On March 7, 2000, L & H acquired 96% of the stock of Dictaphone Corporation, a Delaware corporation, from Stonington in exchange for L & H stock. *Id.* The terms of the merger specified that Delaware law should govern all aspects of the Dictaphone merger transaction and irrevocably submitted the parties to the merger transaction to the jurisdiction of the Delaware state and federal courts. (D.I.6, R.A.14, Ex.A at 53). On May 5, 2001, the Merger was consummated. (D.I.8 at 6).

On November 27, 2000, Stonington filed a complaint seeking relief with respect to the merger in the Court of Chancery of the State of Delaware. (D.I.8 at 6). On January 11, 2001, the action was removed to the United States District Court for the District of Delaware. *Id.* On November 29, 2000, L & H filed a Chapter 11 case under the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. *Id.* On November 30, 2000, L & H also filed a Petition For Concordant (judicial composition) in Belgium pursuant to Belgium law. (D.I.4, 4–5). L & H maintained dual plenary bankruptcy cases in the United States and Belgium. *Id.* at 5.

On May 24, 2001, the Bankruptcy Court issued an order concluding that Stonington's claims were pre-petition claims subject to mandatory subordination under Section 510(b) of the Bankruptcy Code, affording Stonington the same priority as L & H common stock. (D.I.6, R.A.14, Ex.D at 3). Stonington filed a Proof Of Claim in the Belgian proceeding on February 8, 2001, and a Proof Of Claim in the United States proceeding on June 8, 2001. (D.I.6, R.A.14, Ex.E at 2; D.I.6, R.A.14, Ex.F at 1). On June 20, 2001, the Belgian Court rejected L & H's plan that subordinated Stonington's claim because such discrimination is impermissible under Belgian law. (D.I.6, R.A.14).

In its August 27, 2001 Order, the Bankruptcy Court granted the Debtors' Motion For Partial Judgment On The Pleadings, Or In The Alternative, Partial Summary Judgment As To The Sixth Cause Of Action Set Forth In L & H Group's Second Amended And Supplemental Complaint For Declaratory And Injunctive Relief And Actual Damages. (D.I.1, Ex.A). In so doing, the Bankruptcy Court ordered that the "priority, treatment, and classification of the Dictaphone Merger Claims (as defined in the Motion) are matters to be determined exclusively by the Bankruptcy Court in accordance with the Bankruptcy Code." (D.I.1, Ex.A). Additionally, the Bankruptcy Court enjoined Stonington "from further prosecuting the issue of priority, treatment, and classification of the Dictaphone Merger Claims in Belgium under Belgian law." (D.I.1, Ex.A). The subject of this appeal is that portion of the Bankruptcy Court's August 27, 2001 Order: (1) denying comity to Belgium and determining that United States law applies, and (2) enjoining Stonington from further prosecuting its claim in Belgium.

## II. Discussion

### A. Standard of Review

 Under 28 U.S.C. § 158(a), this Court has jurisdiction to adjudicate appeals from final judgments, orders and decrees of bankruptcy judges. Pursuant to Federal Rule of Bankruptcy Procedure 8013, the Court "may affirm, modify, or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings." Fed. R.

Bankr.P. 8013. In reviewing a case on appeal, the bankruptcy court's factual determinations are subject to deference and shall not be set aside unless clearly erroneous. *Id.; see In re Gutpelet*, 137 F.3d 748, 750 (3d Cir.1998). However, a bankruptcy court's conclusions of law are subject to plenary review and are considered de novo by the reviewing court. *Meespierson, Inc. v. Strategic Telecom, Inc.*, 202 B.R. 845, 847 (D.Del.1996). Mixed questions of law and fact are subject to a "mixed standard of review" under which the appellate court accepts findings of "historical or narrative facts unless clearly erroneous, but exercise[s] plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts." *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 641–642 (3d Cir.1991) (citing *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101–02 (3d Cir.1981)), *cert. denied*, 503 U.S. 937, 112 S.Ct. 1476, 117 L.Ed.2d 620 (1992).

■ Where, as here, a bankruptcy court's decision relates to the extension or denial of comity, the review of the bankruptcy court's decision is subject to an "abuse of discretion" standard. *See Remington Rand Corporation–Delaware v. Business Sys., Inc.*, 830 F.2d 1260, 1266 (3d Cir.1987) ("[B]ecause the extension or denial of comity is discretionary, we review this issue by the abuse of discretion standard").

**B. Whether the Bankruptcy Court Erred in Holding That Priority, Treatment, and Classification of Dictaphone Merger Claims Were To Be Determined Exclusively By The Bankruptcy Court In Accordance With The United States Bankruptcy Code**

■ The doctrine of international comity requires a domestic court to give effect to executive, legislative, and judicial acts of a foreign sovereign. *Hilton v. Guyot*, 159 U.S. 113, 163–64, 16 S.Ct. 139, 40 L.Ed. 95 (1895). The question of whether to extend international comity is relevant only where there is a true conflict between United States law and that of a foreign state. *Maxwell Communication Corp. v. Societe Generale (In re Maxwell Communication Corp.)*, 93 F.3d 1036, 1049 (2d Cir.1996). A true conflict exists where foreign law requires conduct that violates United States law. *Id.* In the face of a true conflict, the law of the sovereign who has the most significant contacts, that is the "center of gravity", should be applied. *Id.* at 1055. Furthermore, United States courts should deny comity only if its acceptance would be prejudicial to the interests of the United States. *Hilton* at 163–64, 16 S.Ct. 139.

1. *Whether The Bankruptcy Court Erred In Finding a True Conflict Between Belgian Law and United States Law*

In appealing the Bankruptcy Court's Order, Stonington contends that a choice of law analysis should not be applied, in this case, because L & H has expressly invoked the jurisdiction of both the United States and Belgium courts, and therefore, the law of each sovereign should apply to the respective cases. (D.I.11, 9–10) In the absence of coordination between Belgium and the United States, Stonington contends that a choice of law analysis is inappropriate. (D.I.11 at 10). Furthermore, Stonington contends that there is no true conflict present because the Belgian proceeding and the United States proceeding are completely independent of one another and the United States does not have the power to dictate that its own law should apply in Belgium. (D.I.11 at 12).

L & H responds that there is a true conflict present between the two choices of law because it would be impossible to distribute L & H's assets consistent with both the Belgian and United States distribution schemes. (D.I.8, 17). Therefore, L & H contends that a choice of law is required to determine how L & H's assets should be distributed.

After reviewing the record in light of the applicable law, the Court concludes that a true conflict is present in this case. On May 24, 2001, the Bankruptcy Court ordered that, pursuant to 11 U.S.C. § 510(b) Stonington would be subject to subordination. (D.I.6, R.A.14, Ex.D). On June 20, 2001, the Belgian Concordant Court specifically rejected a plan which included language mimicking 11 U.S.C. § 510(b), and subjecting Stonington to subordination, because Belgian law prohibits discrimination among creditors of the sort allowed under United States law. (D.I.6, R.A.14). Thus, there is a true conflict between Belgian law and United States law regarding the appropriate treatment of creditors such as Stonington. Accordingly, the Court concludes that the Bankruptcy Court did not err in concluding that a true conflict exists between the application of United States and Belgian law in this case.

> 2. *Whether The Bankruptcy Court Erred In Finding That The Center of Gravity For The Dictaphone Merger Claims Is The United States*

In appealing the Bankruptcy Court's Order denying comity, Stonington next contends that the Bankruptcy Court erred in applying a choice of law analysis. If a center of gravity test is relevant, however, Stonington contends that the center of gravity of L & H's bankruptcy case should be in Belgium. In support of its position, Stonington contends that L & H is a Belgian corporation whose existence and governance, among other things, is defined by Belgian law. (D.I.6, R.A. 14 at 24).

In response, L & H contends that the center of gravity for its bankruptcy case is the United States. L & H asserts that Stonington is organized under United States law with a principal place of business in the United States, and, the Merger Agreement, relevant to Stonington's instant claim, was executed in the United States with a choice of law provision in which the parties agreed to submit to the jurisdiction of the United States. (D.I.8 at 20; D.I.6, R.A.14, Ex.A at 33).

Addressing the issue, the Bankruptcy Court concluded that the center of gravity of L & H's bankruptcy case is the United States. (D.I.7, R.A.22, 95–96). Upon review of the Bankruptcy Court's finding, and in light of the execution of the Merger Agreement in the United States, the choice of law provision in the merger documents, and the parties' submission to United States jurisdiction, the Court concludes that the Bankruptcy Court did not err in concluding that United States is the center of gravity of L & H's bankruptcy case.

In sum, the Court concludes that the Bankruptcy Court did not err in concluding that there is a true conflict between Belgian and United States law and that the United States is the center of gravity. Accordingly, the Court concludes that the Bankruptcy Court did not abuse its discretion in denying comity to Belgium. Therefore, the Bankruptcy Court Order will be affirmed.

**C. Whether The Bankruptcy Court's Order Denying Comity To Belgium And Enjoining Stonington's Further Participation In The Belgian Proceeding Violated The Law Of The Case Established On December 4, 2000**

In appealing the August 27, 2001 Bankruptcy Court Order, Stonington contends

that the August 27, 2001 Order violates the law of the case as set forth at the December 4, 2000 hearing. Stonington contends that the Bankruptcy Court's December 4, 2000 Order that Stonington "must be allowed to participate in the Belgian reorganization proceeding," established the law of the case. (D.I.7, R.A.18, Ex.B at 162). However, the Bankruptcy Court's August 27, 2001 Order enjoined Stonington's further participation in the Belgian proceeding. (D.I.1, Ex.A). Stonington contends that the orders are in direct conflict, and therefore, the August 27, 2001 Order violates the law of the case established by the December 4, 2000 Order. Accordingly, Stonington contends that the Bankruptcy Court's August 27, 2001 Order should be vacated.

In response, L & H contends that the August 27, 2001 Order is not in conflict with any other orders issued in this case. Specifically, L & H contends that the Bankruptcy Court was not directly presented with the question of what law should govern the treatment of the Stonington claim when it issued its December 4, 2000 Order. Rather, the December 4, 2000 ruling only applied to the limited issue of Stonington's ability to file a proof of claim in Belgium.

Addressing this issue, the Bankruptcy Court rejected Stonington's argument that its decision to deny comity would violate the law of the case. Specifically, the Bankruptcy Court stated that "Stonington could file a proof of claim [with the Belgian Concordant Court] and could participate in that process. I was not faced with the question of the treatment of the Stonington claim.... this is the first time in my memory that this issue is squarely presented for determination of record." (D.I.7, R.A.22 at 87).

 The law of the case doctrine holds that once a court decides upon a rule of law, that rule of law must govern the

same issues in later stages of the litigation. *Resyn Corp. v. U.S. (In re Resyn Corp.),* 945 F.2d 1279, 1281 (3d Cir.1991). Applying this doctrine to the instant case, the Court agrees with the Bankruptcy Court's conclusion that its decision to deny comity to Belgium did not violate the law of the case. The record indicates that at the December 4, 2000 hearing the Bankruptcy Court was not presented with the issue of what law should apply for the treatment of the Stonington claim. Accordingly, the December 4, 2000 Order did not establish the rule of law for the treatment of Stonington's claim. Because there was no established ruling by the Bankruptcy Court as to the applicable law for the treatment of the Stonington Claim, the Court concludes that the August 27, 2001 Order did not violate the law of the case.

### D. Whether L & H Waived The Right To Assert That The United States Should Be The Exclusive Forum For the Stonington Claim

In arguing that the Bankruptcy Court should not deny comity, Stonington contends that L & H waived the right to assert that the United States should be the exclusive forum for the Stonington claim, because it failed to appeal two rulings by the Belgian Court granting Stonington the right to pursue its claim in the Belgian proceeding. (D.I.4 at 25). Additionally, Stonington contends that by failing to appeal the Bankruptcy Court's December 4, 2000 ruling that Stonington would be allowed to participate in the Belgian proceedings, L & H waived the right to assert that the United States should be the exclusive forum for the Stonington claim. (D.I.5, R.A.7 at 163–64).

In response, L & H contends that it took a "progressive" approach to Stonington's claims, addressing only as much of the claims as required by the circumstances. (D.I.8 at 26). L & H contends that it was not necessary to argue the question of

what law was applicable to the Stonington claims before the August 23, 2001 hearing. *Id.*

The Bankruptcy Court rejected Stonington's argument that the Belgian proceeding should govern the Stonington claim. The Bankruptcy Court stated that "there is no preclusion by the fact that this issue was not previously presented, although other opportunities were available for that presentation. We understand concepts of waiver requiring unequivocal direct and clear indication of intent not to pursue a particular course." *Id.* at 89.

 A party who fails to appeal a particular ruling within the prescribed time-frame is barred from arguing the merits on appeal. *Morgan v. Perry,* 142 F.3d 670, 689–90 (3d Cir.1998). However, in the Court's view, L & H's failure to appeal the December 4, 2000 Order cannot amount to a waiver of the comity issue, because the issue was not before the Bankruptcy Court. The December 4, 2000 Order addressed Stonington's ability to pursue its claims in Belgium; it did not address the treatment of Stonington's claims in the United States. Indeed, when the comity issue was raised at the August 23, 2001 hearing, L & H addressed it. Furthermore, upon reviewing the record, the Court finds no evidence indicating that L & H unequivocally and directly waived its right to argue the comity issue. Accordingly, the Court concludes that L & H did not waive its right to raise the comity issue, and therefore, the Bankruptcy Court's August 27, 2001 Order was not inappropriate.

### E. Whether L & H Should Be Estopped From Arguing that the United States Should Be The Exclusive Forum For the Stonington Claim

Stonington contends that L & H should be estopped from raising a forum selection argument, because it failed to appeal Belgian Court decisions within the applicable time limits. (D.I.4 at 25). Specifically, Stonington contends that L & H failed to appeal the April 2001 decision denying disallowance for Stonington's claim and the June 20, 2001 decision rejecting the unequal treatment of creditors in the Concordant Plan. *Id.*

In response, L & H contends that no basis exists for judicial estoppel. Specifically, L & H asserts that its positions have been neither inconsistent, nor in bad faith. (D.I.8 at 30).

 Judicial estoppel is only appropriate where a party has maintained inconsistent positions in bad faith. *In re Trans World Airlines, Inc.,* 261 B.R. 103, 111 (Bankr.D.Del.2001). After reviewing the record in light of the applicable law, the Court agrees with the Bankruptcy Court that L & H should not be estopped from arguing the comity issue. As the Bankruptcy Court noted, L & H was always candid with the Bankruptcy Court about "the potential difference in the treatment of a claim like Stonington in Belgium versus in this United States proceeding." (D.I.7, R.A.22 at 87). Further, in the Court's view, L & H has not asserted inconsistent positions, rather L & H simply did not address the applicable treatment of the Stonington claims prior to the August 2001 hearing when the issue was squarely raised. Given L & H's candor regarding the conflict in the treatment of the Stonington claim and the fact that L & H has not maintained inconsistent positions, the Court cannot conclude that L & H acted in bad faith. Accordingly, the Court concludes that the Bankruptcy Court did not err in concluding that L & H was not estopped from arguing this issue.

**F. Whether The Bankruptcy Court Erred In Enjoining Stonington From Further Prosecution Of The Issue Of Priority, Treatment, and Classification of Dictaphone Merger Claims In Belgium Under Belgian Law**

In challenging the injunctive relief granted in the August 27, 2001 Order, Stonington contends that the injunctive relief was inappropriate on three grounds. First, Stonington contends that the basic requirements for injunctive relief were not satisfied. (D.I.4 at 26). Second, Stonington contends that extraordinary circumstances necessary for issuing *sua sponte* injunctive relief were not present, making the order improper. (D.I.4 at 27). Third, Stonington contends that the injunctive relief violated Federal Rule of Bankruptcy Procedure 7065 and Rule 65 of the Federal Rules of Civil Procedure. (D.I.4 at 28).

In response, L & H contends that the Bankruptcy Court did not err in issuing the injunctive relief for three reasons. First, 11 U.S.C. § 105(a) allows the Bankruptcy Court to grant orders *sua sponte* that are necessary to carry out the provisions of the Bankruptcy Code. (D.I.8 at 32). Second, the Bankruptcy Court Order was appropriate as an anti-suit injunction to carry out the terms of its forum selection determination. (D.I.8 at 37). Third, the Order was appropriate to prevent "groundless, abusive, and vexations litigation by Stonington." (D.I.8 at 38).

In reply, Stonington contends that even if injunctive relief was issued according to the Bankruptcy Court's Section 105(a) power, the affected party must still receive notice and the basic procedural require-ments for an injunction must still be satisfied for injunctive relief to issue. (D.I.11 at 16–17).

In full, Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a) (2000). The Court concludes that the grant of injunctive relief was within the Section 105(a) power of the Bankruptcy Court as it was necessary to effectuate the Bankruptcy Court's ruling that the United States had exclusive jurisdiction over the priority, treatment, and classification of the Stonington claim. In addition, the record indicates that Stonington received sufficient notice from L & H's counsel at the August 23, 2001 proceeding that injunctive relief was requested. (D.I.7, R.A.22 at 78).

When granting injunctive relief the court should examine four factors: (1) likelihood of success on the merits; (2) whether the movant would suffer irreparable harm absent the injunction; (3) whether the harm to the movant outweighs the harm to the non-movant; and (4) whether injunctive relief would violate the public interest. *In re Wedgewood Realty Group, Ltd.*, 878 F.2d 693, 700–01 (3d Cir.1989). Balancing these factors, the Court cannot conclude that the Bankruptcy Court erred in granting an injunction.[1] As the Bankruptcy Court recognized, L & H has a substantial likelihood of success on the merits. (D.I.7, R.A.22 at 99). Moreover, the Court observes that irreparable harm to L & H would result if Stonington were able to proceed in Belgium and possibly

---

1. The Court debated remanding this issue to the Bankruptcy Court to consider evidence specific to the four factors typically addressed by courts when considering injunctive relief. However, given the expedited treatment sought by the parties, the Court was persuaded that the record was sufficient to establish the rationale behind the Bankruptcy Court's injunction order.

obtain judgment adverse to the Bankruptcy Court's holding. Accordingly, the Court agrees with the Bankruptcy Court that injunctive relief is necessary and Stonington should be enjoined from further prosecuting its claim in Belgium. Therefore, the Court will affirm that portion of the Bankruptcy Court's August 27, 2001 Order granting L & H's request for an injunction.

## III. CONCLUSION

For the reasons discussed, the portions of the Bankruptcy Courts Order dated August 27, 2001 denying comity and enjoining Stonington from further prosecution in Belgium will be affirmed.