**FEDERAL MARITIME COMMISSION,**
Ludlow Corporation, Petitioners,

v.

**A. T. DeSMEDT, President, American Export Isbrandtsen Lines, Inc., American Export Lines, et al., Respondents.**

No. M 18–304.

United States District Court
S. D. New York.

May 16, 1967.

Supplemental Opinion May 29, 1967.

Robert N. Katz, Sol., for Federal Maritime Commission; Gilbert S. Fleischer, Atty., Dept. of Justice, Admiralty and Shipping Section, of counsel.

Kirlin, Campbell & Keating, New York City, for respondents; John Williams, New York City, of counsel.

RYAN, District Judge.

Since November 12, 1965 the Federal Maritime Commission has endeavored to secure compliance with subpoenas duces tecum, directed to the several respondents, requiring production of certain documents. These respondents named are C. J. Moran described as a resident of New York, the general freight manager of Cunard Steamship Co., Ltd., agents for Thos. & Jno. Brocklebank, Ltd., and Thos. & Jno. Brocklebank, Ltd.: T. C. Hopkins who is described as executive vice-president of United States Navigation Co., Inc., agents for Scindia Steam Navigation Co., Ltd., Hopkins apparently being a resident of New York, and Scindia Steam Navigation Co., Ltd., being an Indian corporation, and also as respondent, United States Navigation Co., Inc., S.S. Norton who is the president of Norton, Lilly & Company, a New York corporation, a respondent, agents for the Shipping Corporation of India, Ltd., also a named respondent which is, from the evidence presented to me, an Indian corporation owned and entirely operated by the Government of India; J. C. Severiens, a resident of New York; and Nedlloyd Lines, Inc., a New York corporation of which Severiens is president and which is, according to the evidence, uncontradicted, agent for and entirely owned, operated and controlled by N. V. Nedlloyd Lijnen, Holland, a corporation organized and existing under the laws of the Netherlands.

The Commission has moved now for an order adjudging the several respondents in civil contempt for failure to obey and comply with subpoenas which were returnable on January 4, 1967 and for their failure to obey the order of this Court directing compliance with such subpoenas.

It is of record that on December 9, 1965 the respondents refused to comply with the subpoenas issued by the Commission on November 15, 1965. A petition filed in this court for an order of enforcement was granted after hearing, and on February 2, 1966 an order was entered directing respondents to produce the documents specified.

This was accompanied by a memorandum endorsement of the Court which is reported in Ludlow Corp. v. DeSmedt, D.C., 249 F.Supp. 496. The order was affirmed on appeal by the Court of Appeals of this circuit on August 29, 1966 and the opinion written by the Court of Appeals is found reported in 366 F.2d 464. A petition for a writ of certiorari filed with the Supreme Court of the United States was denied on December 5, 1966, reported in 385 U.S. 974, 87 S. Ct. 513, 17 L.Ed.2d 437.

The Court of Appeals, in affirming the order of this Court upholding the power of the Commission to issue the subpoenas, wrote in their opinion, 366 F.2d page 473 of the reported opinion:

"We are not unmindful of the problems the Federal Maritime Commission may face in endeavors whether under § 21 or § 27, to require foreign shipping lines to produce documents located aboard. But we are not now confronted with an effort to hold a foreign carrier in contempt or to assess fines for refusing at its government's command to produce documents in response to a subpoena, and we ought not to anticipate that the problem will inevitably arise."

The problem referred to by the Court of Appeals has actually arisen and is presented by the motion now before us, and we are required now to find and to determine whether the documents sought by the subpoenas are in the possession or under the control of the respondents or any of them, and whether the respondents should be required to produce them or be adjudged in civil contempt, as is sought by this motion.

If the respondents-agents are not in possession or control of the documents sought, we must inquire whether these respondents, in the light of their relationship with and the transactions had by them as agents or otherwise on behalf of those respondents who have such possession and control, have made all reasonable and honest efforts to comply with the subpoenas of this Court. If

they have done so, this motion must be denied. If they have wilfully failed in this respect, respondents, or such of them as are at fault, should be adjudged in civil contempt.

■ It has been represented by each of these respondents that the documents sought are located abroad, and that their production has been specifically forbidden by law or official directive of their respective governments. It is required, before such a defense can be asserted, that the statute or authority under which an agency of a foreign government prohibits the disclosure of documents within its borders, in order to be recognized by this Court, contain criminal sanctions, and that is the decision of the First National City Bank of New York v. Internal Revenue Service reported at 2 Cir., 271 F.2d 616 at page 619.

On a review of all of the evidence here, considering the culpability of each one of these respondents separately and apart from the others, I have come to the conclusion that the motion must be denied at this time with reference to some but not all, of the defendants.

There has been no question raised here in this hearing as to the relevance or materiality of the documents subpoenaed in the proceeding before the Commission in the matter of Ludlow Corporation against The Calcutta, East Coast of India and East Pakistan U. S. A. Conference. The individual respondents whom I have named before are all employees, officers or agents of the corporate respondents, save only Charles J. Moran who is now an ex-employee. The corporate agent respondents themselves are not members of the Conference, but it appears that some of them are corporate subsidiaries of members of the Conference and all function in the United States as general steamship agents for members of the Conference, for members who own and operate vessels and trade from Pakistan and India to the United States Atlantic and Gulf ports.

There is no evidence that they have been granted or have exercised other than the usual, customary and primary functions of such steamship agents—that is, the solicitation of cargo and the making of arrangements for the berthing, stevedoring and the like in the United States —save with respect to Nedlloyd where the American corporation is entirely owned, dominated and controlled by the Netherlands corporation.

The record establishes to my satisfaction, and apparently is uncontradicted by any evidence of the Commission, that both the corporate respondents and the individual respondents have produced all documents and records called for by the subpoenas excepting only net revenue figures requested in items I-A, I-B and I-C and the port and stevedoring costs specified in item I-G for ports other than those in the United States.

There is no evidence to contradict the statements and claims of the respondents, both individual and corporate, that the documents not produced by the respondents, which are called for by the subpoenas, are outside of the United States and are not physically in the United States, and there has been no evidence presented that the respondents are in possession of information which was compiled or was abstracted from these documents which are located abroad which would enable any of the respondents to comply with the subpoenas served, with respect to the items not disclosed, by submitting such information as abstracts which they have in their possession, because they have none.

I find that the documents which are not produced are not located within the territorial jurisdiction of this Court and they are within the territorial jurisdiction of friendly and foreign nations who have maintained, and still have, diplomatic relations with the United States and whose corporate nationals were transacting business and are transacting business in ports of the United States with the apparent consent and approval, and in some instances subsidies, of these foreign nations.

I cannot, of course, direct and order anybody to violate the orders of his

native land and I don't intend to do so, and I don't intend the United States Court to be so presumptuous as to attempt to intrude upon the sovereignty of any foreign nation, irrespective of the consent to transact business here that that foreign government has given to its nationals. If in the exercise of its own wisdom it feels that although authorizing the national to become a member of the Conference it can still deny this government access to documents within its own borders, that is for them to determine and not for this Court. It is a matter to be negotiated through diplomatic channels and not through the judicial process of this Court.

Under the circumstances, I feel I cannot adjudge the respondents C. J. Moran or his successor in office, or Thos. & Jno. Brocklebank, Ltd., in contempt, and the motion to adjudge them in contempt is denied without costs.

It is quite apparent from the evidence that has been presented here that the British Board of Trade, acting under appropriate statutory authority, has issued its order forbidding disclosure of these documents which are sought by the Commission located within the territory of England. The American agent Cunard through Moran has made an effort, as was suggested by the Court on the return date of this motion to adjudge the respondents in contempt. These respondents have, following the suggestion of the Court, made formal application to the British Board of Trade for permission to disclose those documents, and that has been denied them.

I will not direct this foreign corporation, either through its American agent or through its corporate representative here, to violate the law of Great Britain, where the documents are located, or to attempt to violate it.

The same observation is made by the Court with reference to the respondents T. C. Hopkins and United States Navigation Co., Inc., and Scindia Steam Navigation Co., Ltd. who are situated in the same posture as these three respondents, which are the respondents S.S. Norton, Norton, Lilly & Company, Inc., and the Shipping Corporation of India, Ltd.

The documents which they were asked to produce by the subpoena before the Court are found to be located in India, and there has been evidence presented to the Court that on September 27, 1966 the Government of India directed that the documents be not produced where those documents are not in the United States. Upon suggestion of the Court, these respondents located within our jurisdiction made application for modification of this order of the Government of India, through the Ministry of Transport and Aviation, and the Government of India and its Ministry of Transport and Aviation refused to modify its order or to permit the release of the documents.

There is authority for the issuance of this order by the Government of India through its Ministry of Transport and Aviation in the Merchant Shipping Act of 1958, a copy of which has been introduced as an exhibit in this case.

The motion, then, to adjudge these several respondents, individual and corporate, as guilty of civil contempt is denied.

That leaves for decision only the application to adjudge the respondent J. C. Sevens and Nedlloyd Lines, Inc., New York, a corporation, in civil contempt.

I have had occasion to observe, as this matter was presented in its several stages, that there was not that complete disclosure of the history and background of the entire transaction which is ordinarily expected both of a government agency and of respondents who are involved in proceedings before a government agency where the process of the Court is invoked or attempted to be invoked. However, passing that over, there has been presented to the Court, following the Court's prompting and urging, supplemental information at this hearing. When this matter came back to me for hearing to adjudge these respondents in contempt, I found that there had not been the disclosure that the Court

ordinarily would expect, and that gave rise to my memorandum endorsement of April 28, 1967 which brought this matter on for hearing.

There is no sense in my repeating now on the record here the contents of that memorandum endorsement. It is a matter of record in the files of the Court. However, it is quite apparent from the law of the Netherlands concerning the disclosure of economic data of a competitive nature that where that information is in documents located withing the territorial borders of the Netherlands the statute also provides for dispensation and provides that an application may be made to secure consent of the Government of the Netherlands to release that information.

■ I find that neither Mr. Severiens nor the New York corporation has made any application. Mr. Severeins is required to do so. If he fails to do so, I will adjudge him in civil contempt. If the New York corporation, which is doing business here in this country and in the city, fails to make such an application to the Government of the Netherlands for the release of and for permission to disclose these papers and this information, I am going to adjudge them both in contempt.

I am not making such a ruling now, but I feel that they are both required to do so, and I am not passing on the motion in so far as it concerns them. I am empowered to impose a substantial fine and other punishment.

I am going to put this matter over for ten days. At that time I expect a report from these two respondents made in court as to whether or not such an application has been made and the result of such an application. It is for them to decide whether or not that application should or should not be made.

### Supplemental Opinion.

I find from the record before me that this Court has jurisdiction over J. C. Severeins individually and as president of Nedlloyd Lines, Inc., a New York corporation transacting business in this District, and that it also has jurisdiction over the person of N. V. Nedlloyd Lijnen, a corporation of the Netherlands, by reason of the fact that N. V. Nedlloyd Lijnen actively conducts and transacts business in this District through Nedlloyd Lines, Inc., which it owns, operates, dominates and controls, that it is a member of the conference involved in these proceedings, actively conducts and transacts business in this country and in this District as a member of this conference, all with the tacit if not express consent of the Government of the Netherlands and of its management and its board of directors and officers.

I find that the documents sought and not produced by the alleged contemnors are not physically present in this country but are part of the corporate records of the N. V. Nedlloyd Lijnen and are located within the territorial borders of the Netherlands.

It is uncontradicted by any expert or factual testimony presented by the Federal Maritime Commission that the documents sought may not be removed or their contents disclosed to the Federal Maritime Commission or produced in court without the approval and consent of the Ministry of Transportation, Directorate General of Shipping of the Government of the Netherlands, as is enacted in the Economic Competition Act, particularly Section 39 et seq. of said Act, being a law of the Netherlands.

This agency of the Government of the Netherlands has refused to grant its consent to such disclosure and to the production of the documents sought by the subpoena issued by this Court in this Court or in this country.

■ We cannot, even though we find that this Court has jurisdiction of N. V. Nedlloyd Lijnen, direct it to violate the laws of the country of its origin by committing acts within that country which are forbidden by its laws. The problem presented is therefore one for affirmative action by the Federal Maritime Commission with reference to further

commercial activities of the N. V. Nedlloyd Lijnen and the other members of the conference involved within this country or for diplomatic consideration but does not rest with this Court.

The failure to comply with the subpoenas and orders of this Court are therefore found not to be wilful and contumacious.

The motion to adjudge the alleged contemnors in civil contempt is denied, and it is so ordered.